Ms. Skelnick, you may proceed. Good morning, Your Honors. Good morning, Counsel. May it please the Court. I am here this morning on behalf of Hazen Long. Mr. Long is the petitioner in a post-conviction proceeding which was dismissed at the second stage. And this case presents issues relating both to ineffective assistance of direct appeal counsel and unreasonable assistance by post-conviction counsel. With respect to the allegations raised by Mr. Long in his pro se petition, which were ultimately addressed by post-conviction counsel, one of them relates to the state's failure to correct perjured testimony by a witness. And if I may, I'd like to just go back a little bit with respect to the history of this case to set the stage for this issue. This is an appeal arising out of Mr. Long's second trial for the same offense. The first trial during the direct appeal, Mr. Long's direct appeal counsel raised two issues relating to prosecutorial misconduct. And this court reversed Mr. Long's conviction and sent the case back for a new trial based on prosecutorial misconduct. However, the prosecution was not deterred by that. During the second trial, the defendant was again convicted, and on direct appeal, direct appeal counsel raised two instances of prosecutorial misconduct. One related to comments made relating to Gone with the Wind, which direct appeal counsel said were racially charged comments. The other related to the prosecutor's use of a personal anecdote. This court, during the second direct appeal over the dissent of Justice McDade, found that the first comment relating to comments from Gone with the Wind, that that was not an improper comment, that basically that was a comment about the failure of witnesses or the reluctance of witnesses to become involved or to come forward. This court did find that the prosecutor's reference to a personal anecdote during the closing argument was improper, but found that it did not warrant reversal because it was an isolated comment. Although the court did say that this evidence was closely balanced, as it was during the first trial. With respect to whether this was an isolated comment or not, in fact, there were other instances of prosecutorial misconduct that took place during the second trial and that were not raised by appellate counsel. So it was not, in fact, isolated conduct during the second trial. The one issue that was specifically raised in the pro se petition and argued by a post-conviction counsel was the fact that the state's attorney, particularly Ms. Mermelstein, who I believe was the prosecutor both at the first trial and the second trial, that she failed to correct perjure testimony by one of her witnesses, and that was Brooklyn Irby. During the first trial, Brooklyn Irby was actually not a very good witness for the state. Ms. Irby, when she got on the stand and was questioned, denied that she had seen the shooting at all. She was impeached by the state with a letter she had written to a friend of hers who was in the prison, and then she said she had seen the shooting and she accused Mr. Long of committing the shooting. However, during the first trial, she also admitted that approximately five months after she first spoke to the police and implicated Mr. Long, she had talked to both an investigator from the state's attorney's office and to two assistant state's attorneys, including Ms. Mermelstein, who was prosecuting the second trial, and had said to them that her initial statement implicating Mr. Long was a lie. She also admitted at the first trial that the reason when she talked to the state's attorney and the investigator, she told them, I only implicated Mr. Long because one of the police detectives, who I believe was Detective Groh, had threatened me and said that he was going to take my children away from me. And so I just said what they wanted to hear. So she admitted at the first trial that her initial statement, that she had told them it was not true. You get to the second trial, and I would say she probably turned out to be the state's best witness at the second trial because she testified consistently throughout the second trial. She never acknowledged that she had ever recanted, and in fact that's the issue that's brought before us in the post-conviction petition. When she was asked on cross-examination whether it was true that she had spoke to a state's attorney's investigator and the various assistant state's attorneys, one of whom was prosecuting the case, he said, isn't it true that you told them five months after the shooting that your implication of Mr. Long was a lie? She said on, I believe, four or five occasions, no, I never said that. No, I never said it was a lie. I never recanted. The prosecutor, during the redirect, did not get up and challenge her witness. In fact, she just asked, did the police come and talk to you after you wrote a letter? That was the extent of the redirect examination. But here the jury had the necessary information, didn't they, because Walter was called to testify. Only partially. They did not have the initial statement that Irby had made that her reason for falsely implicating Mr. Long was because she had been pressured by the police. That never came out before the jury. In addition, the state's attorney, by not acknowledging that she herself had been told by the witness that she was lying, she essentially managed to bolster this witness's credibility, and she treated it both in her examination of investigator Walter and later in the closing argument, she treated it as Ms. Irby being like all the other witnesses in this case, that it wasn't really a recantation at all. What it was was, here's just another example of a witness who was reluctant to come forward. So not only did she not acknowledge that she was one of the recipients of this recantation, but she turned it around and used it to bolster the credibility of Ms. Irby as a witness. And I think that's what's significant here. The state's argument on appeal is that she didn't have any obligation to correct this testimony, even though she knew it was false, that she could sit back and let the defense impeach the witness. But, in fact, the state has an obligation, when it's presented with testimony it knows to be false, to correct that testimony and correct it before the jury. And the state has an obligation, not just defense counsel and not just the trial court, but the state has an obligation to ensure that the defense is given a fair trial, that the defendant is given a fair trial. In these trials, not everything is crystal clear. There are all these gray areas, and you have a lot of the witnesses in these criminal trials go back and forth. That's not uncommon, isn't that right? It's not uncommon, but I think it's uncommon to have a prosecutor fail to acknowledge, when it's within the personal knowledge and made to the prosecutor. I have not seen a situation before where the prosecutor simply ignores the fact that her witness is testifying falsely. But as to this defendant, the testimony of the witness was impeached, was it not? Investigator Walter was brought on, in fact, he was the only defense witness, but he was brought on to say that he spoke to Ms. Irby in November, that she told him that her initial statement implicating the defendant was a lie. On cross-examination, what Ms. Mermelstein did with that was to say, well, did she say this when you served her with the subpoena? And the investigator said yes, and was she hostile? Yes. She was concerned, she was upset. So again, it's not quite the same thing for a defense attorney to try to impeach a witness as it is for the state who's now looking at this witness who's refused to acknowledge any inconsistencies. It's a much different thing for the state's attorney not to get up there and say, Ms. Irby, you spoke to me, you admitted to me that you had lied. Isn't that true? Maybe she could have asked her why she did that or what her reasoning was, but to ignore it altogether and then to use it to her advantage to suggest that she's just another one of these witnesses who is reluctant to come forward and that it's not a recantation. I think she was just blindly denying the fact of the matter. Ms. Conant, there isn't any gray area in the Supreme Court cases, is there? In terms of? With regard to the obligation of the state to correct the perjury? No, there isn't, Your Honor. In fact, NAPU, which was decided some 40-some years ago, in that very case there was an issue with respect to the prosecutor failing or letting a witness testify that he wasn't getting any kind of consideration. The defense did bring out some evidence of that through another witness saying, didn't your attorney tell you that he was going to do something for you? And the Supreme Court said that is not enough for a prosecutor to meet his or her obligation to see that false testimony isn't presented to a jury. And is it Jimerson? Yes. That says that it has to be corrected even if the only thing that it impacts is the credibility of the witness? Correct, correct. So the Supreme Court law is clear, is it not? I agree. Yes, it certainly is. And it imposes an obligation on the state. It's not satisfied by hoping that maybe the defense will take care of it. There's also other instances in this record which were not raised by post-conviction counsel of prosecutorial misconduct and other meritorious issues. Post-conviction counsel, in this case what Mr. Long was asserting and all he was asserting in the post-conviction petition related to direct appeal counsel, that direct appeal counsel did not afford him effective assistance on appeal. So to provide assistance for a defendant who is alleging ineffective assistance of appellate counsel, it's actually a relatively simple task. This attorney did not have to go out and search for witnesses, didn't have to procure affidavits. When you're faced with an allegation regarding ineffective assistance by direct appeal counsel, what the post-conviction attorney needs to do is simply read the record. That's the beginning and the end of the inquiry with respect to direct appeal counsel. And she indicated she had read the record, but she overlooked three other serious issues that arose, two of which, as I said, were related, again, to prosecutorial misconduct. First of all, the videotapes that were introduced, the Sheila Cooks and Shawanda Walker, during those videotapes, which were admitted without objection and allowed in as substantive evidence, both of these witnesses were asked on the videotapes if they had heard why the shooting took place. And both of them talked about common knowledge in the community or gossip in the community that this had taken place because there was some kind of altercation between Payson Long and Lariat Sherman. Sheila Cooks, I believe, said, oh, I heard it happened on the day of the shooting. Shawanda Walker said, I heard that Lariat hit Payson over the head with a gun, and that was the reason for the shooting. There's no objection to this. The jury heard it. The other evidence of motive that came out of trial was pretty weak. The other witnesses couldn't even recall what the altercation was, couldn't recall when it happened. So this hearsay evidence went a long way toward trying to explain why there might have been a motive that didn't otherwise exist. So certainly that should have been raised by appellate counsel and should have been raised by post-conviction counsel. The other instances relating to prosecutorial misconduct were, first of all, during the initial closing argument, the prosecutor on several occasions said, there's no evidence that the defendant didn't do this. The defense isn't saying that the defendant didn't do this. Made comments that shifted the burden of proof to the defense and, in fact, suggested the defense counsel himself thought that his client was guilty but hadn't produced any evidence to rebut that. So that was a serious violation of the defendant's right to the presumption of innocence. Thirdly, in rebuttal, Assistant State's Attorney Mermelstein made repeated references to the letter Brooklyn Irby had written, a letter that was not introduced at the second trial and, in fact, couldn't have been introduced because Brooklyn Irby never testified inconsistently. But the prosecutor went on and on about the letter, about the contents of the letter, suggested not only that the contents were true but that Ms. Irby was a more credible witness because she had long ago said the same thing she was saying in court. Thank you, Your Honor. And, in fact, it got to the point where the trial judge intervened and that objection sustained, although no one had objected. And at that point, certainly, direct appeal counsel and post-conviction counsel should have seen that as a serious error. In fact, once the jury retired to deliberate, the first thing they did was send out a note to the trial judge saying, why was this letter referenced but not admitted into evidence? The judge did not really cure the error at that point because he told them, basically what he told them was you can consider the testimony and the exhibits which had been admitted. Well, there was some testimony with respect to the fact that Brooklyn Irby had written a letter. So it didn't tell the jury that this evidence should not be considered and there's a substantial probability that it was used to infer Mr. Long's guilt. We would ask, Your Honors, that you find that Mr. Long was not given a fair trial, that direct appeal counsel failed to raise issues that should have been raised, and that post-conviction counsel also failed to raise issues that should have been raised. And we would, therefore, ask that Your Honors reverse the trial judge's order dismissing his post-conviction petition. Thank you. Okay. Thank you, Ms. Skelnick. Mr. Hanson, you may respond. Good morning, Your Honors. May it please the Court, Counsel. I think our brief easily responds to the point my opponent made that I would like to highlight a couple matters for Your Honors here today in this argument. The false testimony we're dealing with was the witness's claim that she did not earlier recant the prior statement implicating the defendant. There was no possible harm in this case. Defense counsel presented the people's investigator to testify that the witness did so recant and he drove it into the ground. I'm not knocking him for that. He did a wonderful job of it. He impeached her greatly on that. This idea of unlawful or, I'm sorry, improper testimony, untruthful testimony, being corrected by the state. Sure, that should be done, but the point is it must be corrected, and it was done here. Justice McDade referred to the Supreme Court cases saying you simply have to do it. True enough, they do say that, but they don't say it in the context of a case with facts like this where even though there was untruthful testimony given, the defense lawyer brought it out to the jury. The point is that the jury is to know if there has been untruthful testimony given, and although ideally it would have been done by the state on redirect examination, here the defense lawyer made more hay out of it. Indeed, that's a benefit to the defendant. All sorts of times, we all know as lawyers, if you've got bad information out there, you try to minimize it to the jury by bringing it out yourself. That would have been a boon to the prosecution to bring it out herself. Instead, she let the defendant get whatever points were available to get from it by him bringing it out. Mr. Hanson, with all due respect, the point is that the state comes into the trial with all kinds of advantages that derive from the power of the state, the representation of the people, and it's not anywhere close to say that the defense attorney made the correction and that the state didn't have any obligation to therefore make that correction. It's not what the Supreme Court has said in its cases. In fact, if you have a situation where not only is the state not making the correction, it's suggesting in its argument that the correction is wrong? It did not suggest in its argument that the correction was wrong. Well, I think that that's a matter of perception. Oh, certainly it is that, but I think if you look at the entire argument, you will see, Your Honor, that Nancy Mermelstein did never say that, did not say that. She was just arguing in the context of the evidence here. Keep in mind there were four, count them, four eyewitnesses who said this defendant shot the victim in the back. And her testimony was overwhelmingly likely to be correct in context because it was very similar with the usual discrepancies between eyewitness accounts of things with the three other witnesses. Four of them saw a pace of long shooting the defendant whose name I've forgotten in the back because he's riding his bike. Okay, I'm just going to the procedural issue. And the Supreme Court has said that the state has the obligation to correct. They have said that. But I hope you get my point that they have said that in the case where the matter really didn't go corrected, didn't get corrected. Here it got corrected. The state should have done it. No question the state should have done it. And they didn't do it here on redirect. So the prosecutor should have said, isn't it true that you said to Mr. Walker, I recant? But then the defense lawyer brought it out and really hammered it. So it was done. The defendant was caused no injustice. This information that Ms. Irby would have kept from the jury was brought out to the jury beautifully by defense counsel who then hammered it in closing argument as he should have. He did an excellent job for his defendant. And the Supreme Court says that if the state does not make the correction, a new trial is required. As a general rule, yes, but they didn't involve the situation where the information was nonetheless given to the jury. They have said it, but not on facts like these. They have said a new trial is required because darn it, state, you should have brought it out. It wasn't brought out. Therefore, it doesn't take any rocket science to see the defendant's prejudice. Here is information favorable to the defendant, a recanting witness, that didn't get to the jury. And that's what's said in those Supreme Court cases. So basically you're saying Supreme Court cases are factually dissimilar, but the principle remains the same. That's pretty much what I'm saying. Yeah. The reason for the principle in these other cases which are factually dissimilar is so that that information is presented to the jury. The point is not to keep good evidence from the jury. Yes. I think you and I are saying the same thing, just in different words. Okay. But I think my colleague's suggestion is that though there is a dissimilarity in fact, that there may be, and how do you respond to this, more credibility, so to speak, if it was brought out by the state as opposed to if it's brought out through cross-examination or direct examination of a defense witness. I would say, Your Honor, that I think I alluded to earlier, probably there's less credibility because now you've got the defense lawyer hammering home this point. And it looks bad to the jury. Hey, why didn't the state bring this out? When the state brings it out themselves, they can bring it out. I can't posit how the specific question should be informed. They can posit it in the least harmful manner to the state. Whereas here, you bet the defense lawyer's not going to posit it in any such way. And so the point is the jury was given this information and really hit hard with it. And my point is the state should do it, and the reason the state should do it is so the jury gets to hear truthful evidence. The defense lawyer saw to this ad nauseum. And I don't mean that in a negative context. I mean that he really hammered the point home. He didn't just obliquely refer to it. I think I responded to your question. Yes. With regard to this issue, is there a reasonable likelihood that the false testimony could have affected the verdict in this case? Isn't that one of the key questions to ask yourselves? Yes. There is no such reasonable likelihood here. No, Your Honor. Given the fact that the jury was headed brought out by great cross-examination. I'm sorry, not just cross-examination. I'm even somewhat misspoken. It's the defense lawyer presented Walker as their witness who really brought it out. He hammered it as he brought the state's investigator as a defense witness. Think how wonderful that testimony looks to a jury with the state's prosecuting the defendant. Their investigator is a defense witness. And that, I'm probably being somewhat redundant in my point, and I often spoke of cross-examination. In cross-examination, he set her up. Did you recant? No, I didn't. No, I didn't. Then he completed the impeachment with Mr. Walker. I believe he's the name of the state's witness. See, I agree that the standard is, as you said, if ever there's a case where that was so, it's this case, Your Honor. Have I responded appropriately to your question? The Nampu case that my opponent relies on is not in point. The lie there involved a deal with the prosecutor, and it was not corrected. Unlike the situation in Jimmerson, another case my opponent relies on, here the perjured testimony was ultimately not used. In Jimmerson, it was used. The prosecutor argued also honestly, and this is referring to some things that are brought up in the reply brief, that Ms. Irby did not want to be involved, which this court noted was so on the direct appeal. It's in the report, the unpublished order of this case. The prosecutor is saying nothing more than this court itself didn't say. The defendant is critical of me saying in my brief that witnesses Cooks and Walter and Irby seem perjurious when backing away from earlier implicating the defendant. Look at the videotaped statements of those two, Your Honor. They're in the record. They're there for you to look at time and time again. And look at the testimony of Ms. Irby. I think you'll see my argument's a reasonable one. In the videotaped statements, Cooks and Walter both said they saw the defendant shoot the victim. It's for the jury to consider whatever differences there were in the statements. Again, there were four eyewitnesses. Defense counsel got Ms. Irby to repeatedly deny this recantation and then brought in the investigator. Irby was impeached on this point at this second trial because counsel had the happy advantage of having the transcript from the first trial. The impact of it was greater, as I've already said, because it was brought out by defense counsel. Two, the jury was made aware of Irby's earlier claim that she gave the statement implicating the defendant under the threat that her kids would be taken away. Counsel says this method of dealing with this was not as good because that did not come out. That's incorrect. Cooks and Walter made the same claim. We gave these implicating statements because we were threatened with having our children take away. In her testimony, and I believe it's R-497, Ms. Irby said, in this trial, I was threatened by having my children take away. So the fact that that information did not come out in this case is simply incorrect. It did come out. And I wrote down R-497. It's certainly in the neighborhood of that. And the bit about witnesses being reluctant to testify, and again, these are with reference to things brought out in the reply brief. This court noted the obvious, and it's clear from the record. Edwards, Irby, Cook, I'm sorry, not Edwards, but Irby, Cooks, and Walker were all reluctant to testify. There was no ineffective assistance of appellate counsel because nothing was done to prejudice the jury. As to the remaining, nothing done prejudiced the jury with regard to this not correcting the statement that I didn't recant. On the pro se claim thing, you know, post-conviction counsel simply reshaped the defendant's claims in his pro se petition. The defendant's claims in the petition were two. Counsel was ineffective, appellate counsel for not bringing up reasonable doubt, for not bringing up this Irby recantation. Those were the two claims. Defense counsel had no obligation as post-conviction counsel where you're just entitled to reasonable assistance, not the effective assistance of counsel standard on your stripling. Defendant had no, defense counsel had no obligation to bring up those other issues, and I knocked you over the heads with this in my brief. Vasquez said that the counsel need not refresh or refashion a defendant's claim that his confession was due to force to the fact that his confession should be suppressed because of violation of the Vienna Convention. In other words, defendant said I've had a forced confession. That's what post-conviction counsel was to develop. Not come up to I had a bad confession because the Vienna Convention about notifying my embassy was not brought out. I think I've made that point. Post-conviction counsel, according to the Pendleton case, need only examine enough of the record to adequately present the claims the defendant made. And I've told you what those claims were. Counsel, you have two minutes. Thank you. The Turner and Jennings case that the other side relies on I've distinguished in my brief. There is simply no authority that the mere claim of ineffective assistance of counsel on bases A and B means counsel has to look for other claims and come up with C, D, and E. As to the hearsay evidence of motive, it's redundant. There was proper evidence admitted, again, this is all very clearly said in my brief, that one month earlier the defendant struck the victim and sometime thereafter the victim punched the defendant. In other words, the idea of motive evidence was properly brought out. As to the burden of proof argument, your honors, please look at that argument in its fullness. No way did counsel for the state attempt to shift the burden of proof. The state has great latitude in closing argument. Great, not limited. And defendants almost always try to limit that latitude and say I'm great. And then again Kleiner case says reasonable error. There's reversible error only if there's substantial prejudice such as the verdict. As to the argument would have been different. It doesn't begin to meet that statement. As to the final point, this was invited comment. Defense counsel said the police seized on the defendant for no good reason. And this was based on a story the police concocted. Said no, we came across this letter Ms. Irby wrote to her boyfriend saying what she had seen. Now, the big knock on the statement is she says in the letter Ms. Irby tells her boyfriend the hearsay. You know, I saw the defendant shoot the victim in the back. True enough, that seems to be in there, although it's kind of obliquely in there in the long argument counsel gave. But Ms. Irby testified at trial that she saw the defendant shoot the victim in the back. It was admissible evidence, and that's in the record, and I say this in my brief, that the letter could be referred to, just not its contents. Obviously the jury was going to think that that letter was consistent with her testimony. And further, as counsel pointed out, the judge quickly intervened and told the jury to disregard the substance of the letter. And I cite all the usual law that's usually cited that anything on these arguments that might be questionable is cured by instruction, saying that arguments are not evidence that it's a state that has the burden of proof. Both the prosecutor and defense counsel hammered the jury with the fact that the burden of proof was on the state. The state did not remotely attempt to shift the verdict. Thank you. Thank you, Mr. Hanson. Ms. Skelnick, you may reply. Thank you. I'd like to comment on the state's argument with respect to the state's presentation or failure to correct perjured testimony. This is a case where this very prosecutor was chastised by this court in the last opinion for prosecutorial misconduct. She was able, by not correcting what she knew was false testimony, which was in fact evidence that had been presented to her, she belittled the very defense theory that this witness was being inconsistent. And that is another instance of prosecutorial misconduct. The state says, oh, the defendant had the advantage, took great liberties, and was able to impeach Irvie because he had the first trial transcript. In fact, that first trial transcript was never brought out. So all he was able to do was put on, or all he did do, let me say that, was put on the investigator, who very reluctantly gave evidence about, well, she did say this. Oh, but she was hostile. She was concerned. She was upset. And Ms. Hermelstein actually made use of that in her closing argument. She went on and on about saying things like none of these witnesses, there were 40 to 60 witnesses there. They didn't want to get involved. She talked about how one of the witnesses, Keona Edwards, oh, she said it wasn't her problem. She didn't want to get involved. With respect to Brooklyn Irvie, she mentioned the letter, and then she said it wasn't her problem. Well, it became her problem when they subpoenaed her. So she said, I didn't see anything. She never owned up to the fact that this witness had told her that she lied when she implicated Payson Long. That was her obligation. She did not meet that obligation. She commended other instances of prosecutorial misconduct. Mr. Long did not get a fair trial. This was a closely balanced case. Your Honors, acknowledge that in your last decision. And she was able to boost this witness's credibility by failing to acknowledge perjured testimony, failing to acknowledge prior statements that this witness had made to her personally. And for that reason, Your Honors, this conviction can't stand. No further questions. Thank you, Counsel. Thank you, Counsel, all, for your arguments in this matter this morning. It will be taken under advisement in a written disposition, shall we?